THE STATE ex rel. F. P. BLAIR, COLLECTOR OF CARTERVILLE, Appellant, v. CENTER CREEK MINING COMPANY.

Division One, December 2, 1914.

1. **FORMER ADJUDICATION: Action by State for Taxes.** The doctrines of *res judicata* and estoppel by judgment apply to actions by the State for the collection of taxes. And an adjudication is not only conclusive against the State as to the very taxes which were its subject, but its effect extends to those incidental questions actually and necessarily decided in reaching the judicial result.

2. ————: ————: **Matters Concluded.** Where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit between the same parties upon a different claim or demand, the inquiry must always be as to the point or question actually litigated and determined in the original action, not as to what might have been thus

litigated and determined. Only upon such matters is the judgment in the first action conclusive in the second.

3. **INCORPORATION OF TOWN BY COUNTY COURT: Judicial Act.** The incorporation of a town by the county court by authority of Laws 1871, p. 85, is a judicial act.

4. **———: ———: Cannot Be Collaterally Attacked.** An order of the county court incorporating a town by authority of Laws 1871, p. 85, cannot be collaterally attacked, as, by way of defense to an action by the State for taxes.

5. **———: ———: Matters in Attack to be Pleaded.** To assail an order of the county court incorporating a town or city, all essential infirmities and omissions therein must be alleged and proved with the same strictness that would be required in a bill in equity to amend a final judgment of a court of record for fraud or collusion.

6. **FORMER ADJUDICATON: Matters Concluded: Action By State for Taxes: Incorporation of Town.** Where certain city taxes assessed against defendant's property were held invalid on the theory that the ordinance of incorporation as a city of the fourth class was unreasonable in including such property, and the original order of incorporation as a town by the county court, which also included defendant's property, was not pleaded or in issue, the judgment is not conclusive, in a subsequent suit for other taxes, of the question whether defendant's property was rightly included in the city by the county court's order of incorporation.

7. **TAXATION: Board of Equalization: Certification of City Assessment: Yields to Land List.** While the certification of a city assessment by the county clerk, who is by statute secretary of the county board of equalization, is a sufficient authentication, yet the corrected land list of the county assessor is the original record of the equalized assessment, and the city assessment must yield to it.

8. **———: City of Fourth Class: Assessment: Valuation Not to Exceed That For County Purposes.** Under Sec. 11, Art. 10, of the Constitution, declaring that the valuation of property for city taxes shall not exceed the valuation of the same property for State and county purposes, and under Sec. 9347, R. S. 1909, providing that the city and county assessors shall jointly assess the property in a city of the fourth class and after the assessment has been equalized by the county board of equalization the city assessor's books shall be corrected in accordance with the changes made by the board, a levy by a city of the fourth class based on an assessment made independently and at a valuation greatly in excess of that fixed for county purposes is invalid.

State ex rel. v. Mining Co.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,*
Judge.

REVERSED AND REMANDED.

*Allen McReynolds* for appellant.

(1) The court erred in admitting the land tax
book of Jasper county for the years 1906 and 1907,
which evidence shows a different valuation from that
certified to by the clerk of the board of equalization
on the city tax books. The city officers of Carterville
had a right to rely upon the assessment appearing on
the city tax book in making their levy. Sec. 5941, R.
S. 1899; Sec. 9347, R. S. 1909. The presumption is that
the assessing officer did his duty. State ex rel. v.
Burch, 186 Mo. 205. The tax bill is prima-facie evi-
dence that the amount of taxes is correct. State ex
rel. v. Hout, 123 Mo. 355; State ex rel. v. Bank, 144
Mo. 381; State ex rel. v. Bank, 120 Mo. 161. (2) The
court erred in admitting the files in the case of State
ex rel. Pease v. Center Creek Mining Company, as the
pleadings in that case indicated that the question in is-
sue was the reasonableness of the extension of the lim-
its of Carterville, and a judgment in that case could
not be *res judicata* in the case at bar. See authorities
under point 4. (3) The court erred in admitting the
evidence of Spring for the reason that that evidence
could not tend to establish the plea of *res judicata* as
the defendant could not in this case make the defense
of the reasonableness of the incorporation of this ter-
ritory in the original town of Carterville. Our courts
have declared unequivocally that the only way that
this could be reached would be a *quo warranto,* for
such a question goes to the very existence of the mu-
nicipal corporation. Collateral attack of this character
will not be tolerated. Kayser v. Bremen, 16 Mo. 88;
Fredericktown v. Fox, 84 Mo. 65; Flynn v. Neosho, 114

Mo. 73; Kansas City v. Stegmiller, 151 Mo. 209; School District v. Hodgin, 180 Mo. 70; State ex rel. v. Burch, 186 Mo. 219; Stout v. Railroad, 146 Mo. App. 10; Salem ex rel. v. Young, 142 Mo. App. 160; Black v. Earl, 208 Mo. 281; State ex rel. v. Wilson, 216 Mo. 274. (4) The court erred in refusing to declare that the case of State ex rel. Pease v. Center Creek Mining Company was not *res judicata* in the case at bar. The doctrine of *res judicata* is not, as we understand it, especially complicated. In simple terms it means that the judgment in one case determines the question in controversy for all times between the same parties and the same issues. In the case at bar, so far as the parties are concerned, under the doctrine which controls in this State they were the same, but we undertake to say that as to the issues they were entirely different. It was entirely proper under the pleadings and the facts in evidence in the Pease case, to determine whether the extension of the limits as indicated was reasonable, and if the court concluded that the extension was unreasonable it was his duty to hold and find, as he did, for the defendant. In the case at bar the situation is entirely different. At the very threshold of the case—prima-facie showing of the taxes having been made—it is next developed that this land is a part of the original town of Carterville and was included in the order of the county court incorporating the community. This showing made, the status of the whole case changes. The extension of the limits and the inclusion of this territory within that original corporation was not subject to collateral attack in this tax suit. It was not possible in proceedings of this character to set up that the inclusion of this territory was unreasonable and improper. Such a plea would have constituted no answer under such circumstances. The sole and only remedy available to the Center Creek Mining Company or its predecessors owning this property was a *quo warranto* proceeding. See authorities

cited under point 3. The trial court, it seems to us, misconceived the doctrine and the place of the part that *res judicata* plays in this matter. State ex rel. v. Driving Park Co., 174 Mo. 425; New Orleans v. Bank, 167 U. S. 371; Turnverein v. Hagerman, 232 Mo. 693. The right to determine the Pease case could only rest upon the right to determine the reasonableness of the extension ordinance. The judge had no authority to inquire into the validity of the original incorpora-tion nor the inclusion of territory within its bound= aries. This issue was not even presented as a defense to this tax suit. The presumption of the law is that the court in determining the case had in view the de-cisions which controlled his actions and rendered a judgment which was in accordance with the decisions of the State and which he had authority to render. If that presumption be true, the trial court in the former case could have rendered judgment only on a matter of the reasonableness of the limits under considera-tion. A judgment directed at the validity of the origi-nal incorporation would have been void for want of jurisdiction.

*L. E. Bates, Robert F. Stewart* and *R. M. Shep-pard* for respondent.

(1) The court did not err in admitting the land tax books of Jasper county for the years 1906 and 1907, for the reason that the statutes provided that the assessment of the city property, as made by the city and county assessors, should conform to each other, and after such board of equalization has passed upon such assessments and equalized the same, the city as-sessor's books should be changed in red ink in ac-cordance with the change made by the board of equali-zation; the books being introduced by the defendant to show that the assessed valuation as shown by the land

tax book was the correct one, and that the city tax list
did not conform to it.  R. S. 1899, sec. 5941, as amended
by Laws 1901, p. 69; Center Bldg. Co. v. City, 108 Mo.
304.  (2)  The court did not err in admitting the files
in the case of State ex rel. Pease v. Center Creek Min-
ing Co., for the reason that the record in such case
shows that the parties to that suit and the question
involved in that suit, were identical with those in the
case at bar; and hence the issues in the case at bar were
made *res judicata* by the above named case.  Choteau
v. Gibson, 76 Mo. 46; Driving Park v. Kansas City, 174
Mo. 425; Turnverein v. Hagerman, 232 Mo. 704; Don-
nel v. Wright, 147 Mo. 647; Spratt v. Early, 199 Mo.
501.  The court in the Pease case having jurisdiction
over the parties and over the subject-matter, the judg-
ment in that case could not be attacked collaterally.
Leonard v. Sparks, 117 Mo. 103; State ex rel. v. Wear,
145 Mo. 162; Reed Bros. v. Nicholson, 158 Mo. 624;
Donnel v. Wright, 147 Mo. 647; Spratt v. Early, 199
Mo. 501; Turnverein v. Hagerman, 232 Mo. 704; State
ex rel. v. Wilson, 216 Mo. 274.  (3)  The court did not
err in admitting the evidence of Spring, for the rea-
son that the defendant in the case at bar was not mak-
ing the defense of the reasonableness of the incorpora-
tion of this territory in the original town of Carter-
ville, and hence not attacking such incorporation col-
laterally.  The evidence of said witness Spring was in-
troduced for the purpose of showing that the condi-
tions of said land were the same then as when the
Pease case was tried, which evidence was competent,
material, and relevant.  See cases cited under last
head.  (4)  The court did not err in refusing plaintiff's
declaration of law that the Pease case was *res judicata*
as to this, for the reason that the ordinance of 1897,
and not the original incorporation of the limits of the
city of Carterville, was in effect during the years for
which taxes were attempted to be collected both in the
suit at bar and in the Pease case, and the limits of

Carterville as set out by the incorporation by the county court not being in force during the years for which taxes were sued for in the two suits, the limits so fixed had no bearing on the controversy either in the case at bar or in the Pease case. Authorities under points 2 and 3.

BROWN, C.—The plaintiff sues for taxes charged by the city of Carterville, in Jasper county, a city of the fourth class, on the northeast quarter of the southeast quarter of section 17 in township 28 of range 32 in said county, and alleged to be in said city, as shown by the following tabulated statement:

| Years for which Taxes are due | Valuation | Gen'l Fund | Special | Sewer | Water Works | Total Taxes | Pn'y from Jan. 1st & Col's Fees | Total |
|---|---|---|---|---|---|---|---|---|
| 1905 | $ 2000 | $10 | $ 5 00 | ......... | ......... | $ 15 00 | $ 8 55 | $ 23 55 |
| 1906 | 30000 | 400 | 200 00 | ......... | ......... | 600 00 | 270 00 | 870 00 |
| 1907 | 80000 | 400 | ......... | $257 | $200 | 856 | 282 48 | 1138 48 |
| 1908 | 25000 | 125 | 62 50 | 80 | ......... | 267 50 | 56 17 | 323 67 |
| 1909 | 22500 | 112 | 56 25 | 72 | ......... | 239 75 | 27 58 | 267 33 |
| | | | | | | | | $2623 03 |

The answer, after a general denial, pleaded facts relating to the situation and condition of the land tending to show that it ought not to be subjected to urban burdens, and stated "that the pretended ordinance purporting to extend the corporate limits of said city so as to include the defendant's land was and is unreasonable, unjust and oppressive, . . . and that

any and all acts whatever purporting or undertaking to include the said land within the corporate limits of said city of Carterville were and are unreasonable and void.'' It further pleaded that the same issue was adjudicated in a suit for taxes for previous years, in the Jasper County Circuit Court, wherein the State at the relation of one Al. Pease, collector of said city, was the plaintiff, and this defendant was the defendant, in which there was a judgment upon the same issue for the defendant.

The plaintiff introduced his tax bill, corresponding with the foregoing tabulated statement, and an entry from the records of the Jasper County Court, as of April 16, 1877, as follows:

''In the Matter of Incorporation of Carterville:

''Whereas, more than two-thirds of the inhabitants of the territory hereinafter named have petitioned the court setting forth the metes and bounds of their village and commons as follows:

''Beginning at the northeast corner of section No. seventeen (17), township twenty-eight (28), range thirty-two (32), running thence west three-fourths of one mile, thence south one mile, thence east three-fourths of one mile, thence one mile north to place of beginning. The platted town of Carterville being situated within the described bounds, and praying that the territory as above described may be incorporated under the name and style of the town of Carterville and a board of trustees appointed for the preservation and regulation of any commons appertaining to said town. And having asked that for the first trustees of said town that W. A. Daugherty, J. Alexander Wilson, A. N. Reynolds, J. O. Rose and Joseph W. Manlove be appointed.

''It appearing to the satisfaction of the court that the prayer of the petitioners is reasonable.

"It is ordered by the court that the territory above described be and the same is hereby incorporated under the name and style of the town of Carterville and W. A. Daugherty, J. Alexander Wilson, A. N. McReynolds, J. O. Rose, Joseph Manlove be and are hereby appointed trustees of said town."

The defendant introduced the "Land Tax Book" of the county for taxes of 1906 and 1907 and the "Land List" of the assessment for the same taxes. The valuation for each of those years as shown on these books is as follows:

The year 1906, total valuation by assessor $2000; total valuation as adjusted by the board of equalization, $6000. 1907, total valuation by assessor $12,000; total valuation as adjusted by the board of equalization, $15,000. The State and county taxes were charged on those valuations. The tax books of Carterville for the same years were in evidence, and showed a valuation upon this land for each of said years of $80,000. A certificate was attached to the city tax book for 1906 the body of which is as follows:

"I, Lon L. Ashcraft, clerk of the county court, and secretary of the board of equalization and appeals within and for State and county aforesaid, do hereby certify, that the within and foregoing contains a fair, true and correct copy, in red ink, of all changes in real and personal property assessments within the city limits of the city of Carterville for the year 1906, as adjusted by the county board of equalization and appeals, and on file in my said office."

A substantially similar certificate was attached to the city tax book for 1907.

The record in the Pease case in the Jasper County Circuit Court was introduced by defendant. The petition in the ordinary form, for the recovery of city taxes for the years 1898 to 1902 inclusive, was filed September 15, 1903. The answer pleads substantially the same facts with respect to the condition and situation of the

land as in this case, and "that the pretended ordinance purporting to extend the corporate limits of the city so as to include the defendants, said land is unreasonable, unjust, and oppressive." The only ordinance appearing in the transcript of the evidence introduced in that case is a general ordinance entitled, "An ordinance changing and *diminishing* the present corporate limits of Carterville, Mo." It provided that the corporate limits as they then existed, and described as containing more than four and a half sections of land, including the whole of the original town, with the land in controversy, be changed and diminished to metes and bounds containing less than half as much land, but still including all the old town. The process by which the city grew to its larger estate does not appear in the record of that case. The judgment was for the defendant. The court refused, in this case, to instruct, at the request of the plaintiff, that it was not an adjudication against the right of the city to tax the land in question, and did instruct at its request as follows:

"The court declares the law to be that if the evidence in the case of the State of Missouri ex rel. Al Pease, City Collector of the City of Carterville, v. Center Creek Mining Company shows that the question of the original incorporation of the city of Carterville was not submitted to the court in the determination of said cause, and that the question of whether said land was included in the original incorporation of the said city of Carterville was not one of the issues in said cause under the pleadings and the evidence, but that the evidence in said cause shows that the question considered was the reasonableness of the corporate limits of the city of Carterville, as fixed by ordinance of the board of aldermen of said city as shown by ordinance No. 84, page 181 of the ordinance book of said city, then the judgment in the cause of State ex rel. Al Pease, City Collector of the City of Carterville, v. Center Creek Mining Company is not *res judicata* in the present

cause.'' It then gave judgment for defendant, which is now before us on this appeal.

I. The controlling question, and the one on which the decision of the trial court was placed, is whether or not the judgment in the Pease case es-

Former Adjudication: Action by State for Taxes.

tops the city from asserting that the land in question was subject to taxation for city purposes at the time these taxes were levied. There is much respectable authority to the effect that such an adjudication is only conclusive against the State as to the very taxes which were its subject, and does not extend to the incidental questions actually and necessarily decided in reaching the judicial result. This court has, however, adopted and followed the more just and reasonable doctrine that, in the absence of any constitutional or legislative declaration to the contrary, these rules, which it has established and which it enforces for the protection of the subject from vexatious and unnecessary litigation, should be and are binding upon the State itself. [Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 425; New Orleans v. Bank, 167 U. S. 371; Nord St. Louis Turnverein v. Hagerman, 232 Mo. 693.] In the case last cited we said: ''To our minds the matter was so exhaustively considered and so soundly reasoned in the Exposition Driving Park case, that no judicial excuse exists for a re-examination of its doctrine.'' We will assume, then, that the doctrine of *res judicata* and estoppel by judgment applies as well to cases of this character as to ordinary litigation between individuals, and consider its application from that standpoint. This was the view taken by the trial court in the instructions given and refused. Was it rightly applied?

II. There is no question in this case as to the identity of the parties with the parties in the Pease

case, or of the capacity in which they sue. The plaintiff in each is the State, and the relator the collector of the city of Carterville, suing in that capacity, while the defendant is the same. But the thing sued for in the Pease case was the amount of the city taxes for the years 1898 to 1902 inclusive, and the cause of action was its non-payment. The thing in issue and adjudicated was the liability of the land for those particular taxes, and when that was determined by the court and its determination had been embodied in its final judgment the very existence of the judicial branch of the government required that nothing should remain but to give effect to the judgment by final process. "The very essence of judicial power is that when a matter is once ascertained and determined it is forever concluded when it arises again under the same circumstances between the parties or their privies." [New Orleans v. Bank, supra.] The estoppel of the judgment embraces not only everything urged in support or interposed in defense of the cause of action in issue, but everything that might have been so urged or interposed; so that the judgment constitutes the ultimate measure of success on the one hand and of defeat on the other. While the defendant has the right to interpose as many consistent defences as he may think he has to the action against him, he has the equal right to plant his case upon the one he conceives to be the surest and most available, and thus avoid the trial of a swarm of possible issues which may involve him in almost endless expense and difficulty, and the courts charged with the hearing and determination of the case in much unnecessary labor. In doing this he only risks the subject-matter directly in issue in the particular suit, and does not run the risk of binding himself with respect to other matters by the fiction of an adjudication of things never tried or considered. Upon this point the Supreme Court of the United States in the New Orleans case, supra, quoting with approval from Cromwell v.

Sac County, 94 U. S. 351-353, said: "Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to the matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." This conclusion is supported in the case cited by an extensive collection of authorities from the same distinguished court which we have examined with much interest. In the light of the principles so stated we are to determine whether or not the questions involved in this case, a suit for city taxes for the years 1905 to 1909 inclusive, were "actually litigated and determined" in the Pease suit for the city taxes on the same land for the years 1898 to 1902.

III. The plaintiff, for the purpose of making out its case in the first instance, introduced not only its certified tax bill, but also the original record of an order of the county court of Jasper county, made April 16, 1877, incorporating the town of Carterville, consisting of twelve forty-acre tracts in compact form, of which the tract involved in this suit is one. The regularity of this order is not questioned. It states all the facts necessary to give the county court jurisdiction under the act of February 8, 1871 (Laws 1871, p. 85), which was in force at the time it was made. That the authority given the county court by this act is judicial is not an open question. [Kayser v. Trus-

County Court Incorporating Town: Judicial Act.

tees, 16 Mo. 88; State ex inf. v. Fleming, 158 Mo. 558; Black v. Early, 208 Mo. 281, 303-4; State ex rel. v. Wilson, 216 Mo. 215, 277.] In the case last cited, in considering the action of the county court in the incorporation of a drainage district, this court said that "where such court, or a mere ministerial board for that matter, possesses under the law jurisdiction of a certain class of cases, and is required to find the existence of certain facts, the law will presume, in a collateral attack upon the judgment, that such facts did exist, and that such court or board passed upon them as required by statute." In the Kayser case, which involved the incorporation of the town of Bremen under a law (General Statutes 1845, p. 1048) from which the Act of 1871 was copied, this court held that the county court having jurisdiction of the subject-matter and having declared the town incorporated, the validity of its existence could only be questioned by a direct proceeding in *quo warranto,* and that in a collateral proceeding (which was, in that case, an application to enjoin the collection of town taxes) it could not be shown that the charter was obtained by fraud or had been forfeited by misuser or nonuser. This could only be done by process on behalf of the State.

*Attack upon Order of Incorporation.*

Of the doctrine of that case, we said in Black v. Early, supra, "The Kayser case has been followed by a long line of cases from that day substantially to this, and if any cases be found in our reports that strike or seem to strike a discordant note they have in turn not been followed."

It is not necessary to consider whether or not *quo warranto* would lie to inquire into the propriety of the incorporation by the county court of this particular forty acres of land into the town of Carterville. While we hold that the validity of that action was not a proper subject of inquiry in the Pease case, we will assume that if the question was before the court in any form

in that case, and was there litigated and decided, whether rightly or wrongly, the parties are estopped from questioning the force of that decision in this case.

**Matters to be Pleaded.** But the question of the validity of the judgment of the county court is not one that raises itself. This court has said that "to assail an order of the county court in the matter of incorporating a city or town, or to disturb the result of its judgment through the office of the writ of *quo warranto*, all the essential infirmities thereof, and iniquities therein resulting from the manner of its procurement, or the fraud of the court, must be alleged and proven with the same strictness that would be required in a bill in equity having for its object the amendment of the final judgment of any court of record brought about by fraud or collusion." [State ex rel. v. Fleming, supra.]

There was no attempt made in either the pleadings or the evidence in the Pease case to attack or put in issue the validity or regularity of the judgment of incorporation. In short, the defendant seems to have assumed, as it now argues in its brief, that the ordinance of 1897 "changing and diminishing the present corporation limits of the city," ignored all previous existence of the corporation, and was equivalent, for all purposes, to the establishment of a new corporation, by ordinance instead of by judgment of the county court as then provided by law. [R. S. 1899, sec. 5257.] A complete answer to this is that the city had no such power. When the original town became a city of the fourth class, its jurisdiction was not affected, but its limits and boundaries remained the same after such organization as before. (Id., sec. 5895.) The city had no power to interfere with these boundaries except to extend them over adjacent lands, or to diminish them by excluding territory therefrom. [Ibid.] The power to annex territory is *sui generis*

**Ordinance of Incorporation as City of Fourth Class: Enlarging Boundaries.**

in the sense that it creates one of the interested parties to an adversary transaction the legislative agent of the other with power to bind its antagonist, who has neither voice in the creation of the officers who inaugurate the action, nor vote in the election by which it is confirmed. It is this reason upon which the doctrine that the reasonableness of such an ordinance is a subject of judicial inquiry in suits to enforce rights claimed thereunder is founded, and we have justly said that the doctrine runs like a thread of gold through our case law, and is too firmly buttressed on reason and authority to be now mined by hostile criticism. [State ex rel. v. Birch, 186 Mo. 219, and cases cited.] In pursuance of this doctrine the defendant pleaded in the Pease case, and introduced evidence for the purpose of proving, that the ordinance of 1897 was, so far as it might apply to this land by including it in the city limits, unreasonable and void. Neither by pleading nor evidence was the validity of the judgment of incorporation now before us questioned nor is there anything in that record suggesting that it was considered. We therefore hold that the trial court erred in its ruling that the propriety of the inclusion of this land in the original incorporation of the town of Carterville was a thing adjudicated in the Pease case, so that the plaintiff is estopped from claiming in this case that it is taxable for city purposes.

IV. The question remains whether the assessment for city taxes of 1906 and 1907 is invalid because it does not "conform" to the assessment for State and county taxes for the same years. The certification of this assessment by the county clerk, who is made by the statute the secretary of the county board of equalization and therefore its certifying officer, is undoubtedly the certification of the board, and a sufficient authentica-

Assessment of Taxes: City of Fourth Class: Valuation not to Exceed that for County Purposes.

tion; but the corrected land list of the county assessor is the original record of the equalized assessment, and the city assessment must yield to this best evidence. [R. S. 1909, secs. 11372, 11397.] With this in mind and the Constitution and statute before us, we have no difficulty in the solution of this question.

The statute under which the city assessment was made (R. S. 1909, sec. 9347) was intended to conform to that provision of section 11 of article 10 of the Constitution which requires that the valuation of property for taxation for town, city or school purposes shall not exceed the valuation of the same property for State and county purposes. It provides that "in cities of the fourth class, the city assessor shall jointly, with the county assessor, assess all property in such cities, and such assessment, as made by the city assessor and county assessor jointly and after the same has been passed upon by the board of equalization, shall be taken as a basis from which the board of aldermen shall make the levy for city purposes." It also provides that "the assessment of the city property, as made by the city and county assessor, shall conform to each other, and after such board of equalization has passed upon such assessment and equalized the same, the city assessor's books shall be corrected in red ink in accordance with the changes made . . . and so certified by said board, and then returned to the board of aldermen." In this case no attempt was made to conform to the method so prescribed, either in form or substance. The city assessor valued the land independently of the county assessor for each of the years in question at $80,000, while the county assessor valued it for each of those years respectively at $2000 and $12000, which was raised by the county board of equalization to $6000 and $15,000 respectively. The record of this action, both of the county assessor and board of equalization, was ignored by the county clerk in the list certified by him to the board of aldermen. We are not called upon

to speculate as to the reasons of these officers for their disregard of the plain requirement of the Constitution and laws made to give effect to its provisions, nor can we make an assessment for them. We can only say that this record shows a total lack, both in form and substance, of a legal assessment of this land for the city taxes of 1906 and 1907 and there can be no recovery for them in this suit.

The judgment of the trial court is reversed, and the cause remanded for disposition in conformity with this opinion. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.