## BY THE

### ST. LOUIS KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

## AT THE

## MARCH TERM, 1917.

---

## ROBT. L. SEARCY, Respondent, v. ANNA SEARCY, Appellant.

### Kansas City Court of Appeals, March 5, 1917.

1. **DIVORCE: Former Judgment: Res Adjudicata.** Where, in a former suit by a husband for divorce, the judgment was against him, it is *res adjudicata* as to all acts of the wife prior thereto of which the husband had knowledge and could have offered evidence in support of, and will bar a subsequent suit based on the same grounds, in the absence of any facts subsequently occurring to create a new cause of action.

2. ———: ———: ———: **Failure to Object to Evidence.** The evidence of such acts occurring before the former suit was admissible along with any subsequently occurring facts giving rise to grounds for divorce since they would emphasize and strengthen any such subsequent facts. Hence, the fact that defendant in the subsequent suit did not object to the introduction of the prior facts in evidence does not affect the right to apply the bar of *res adjudicata*, where, as soon as it was discovered that plaintiff was not relying upon anything new, the rule in bar was invoked.

3. ———: ———: ———: **Suit for Alienation of Affection as New Ground for Divorce.** An amendment to a petition for divorce, offered after judgment and submission of a motion for new trial, alleging that since a former suit by plaintiff for divorce, defendant had begun a suit for alienation of affections without justification, in absence of evidence that the alienation suit was without justification, is insufficient to prevent the bar of the second divorce suit by the judgment for defendant in the former suit.

311

4. ——: ——: ——: ——: Settlement: Admission. That a wife accepted in settlement of her suit for alienation of her husband's affections a sum in consideration of which she released him from all obligations for maintenance and support, and released the defendants in the alienation suit, was no admission on her part that her suit had no justification.

5. ——: Desertion: Evidence. Where a husband left because his wife objected to the presence of another woman in the home, and after he left he did not reveal to his wife his whereabouts though she tried repeatedly to ascertain where he had gone, he is not in a position to claim that his wife deserted him.

Appeal from Jackson Circuit Court.—*Hon. C. A. Burney*, Judge.

REVERSED.

*Rees Turpin* for appellant.

*John M. Cleary* and *Mord M. Bogie* for respondent.

TRIMBLE, J.—Herein a husband sued for divorce which the trial court awarded. The wife appealed.

The suit was instituted April 14, 1915. The petition alleged that the parties were married August 28, 1901, and lived together till the —— day of September, 1907, when the husband left his wife, being compelled to do so by her cruel and barbarous treatment, and has ever since remained away from her. The petition further alleged that the wife was guilty of indignities such as to render his condition intolerable, and was guilty of such cruel and barbarous treatment as to endanger his life, that she continually nagged at, quarrelled and fussed with him so as to render life unendurable, the wife having an ungovernable temper and flying into a rage on the slightest provocation or upon no provocation. The only specifications or concrete instances of the wife's conduct stated in the petition was that on one occasion she threatened to strike him with a smoothing iron and would have done so had he not gotten out of the way.

The answer was a general denial and an allegation that the husband deserted the wife on September

1, 1907, and that they had not lived together thereafter, together with a plea of *res adjudicata* wherein the wife set up that after such desertion, her husband brought suit for divorce in the circuit court of Jackson county at Independence upon the same charges and allegations as in the present suit, and the issues thereof were tried and a decree was rendered finding for defendant and dismissing the petition, in January, 1909. No cross-bill or prayer for divorce was filed by the wife.

The parties were married in Wisconsin and lived in Chicago for four years and until 1905 when they moved to Kansas City, the husband taking a position with his mother who was running a hotel. The wife says that they got along very well and happily while away from his folks. But the husband says his wife always quarrelled and nagged at him; that he could do nothing to please her. The greater portion of his testimony consists of statements or conclusions to this effect. He does, however, specify several instances of her alleged treatment of him, namely, once when her boy got into some trouble with the other children at the hotel, and the husband, having witnessed it, did not tell her of it. When she learned of it she asked her husband, when he came home, "Why did you not tell me about Claude getting into that trouble?" Nothing else is told of her conduct on that occasion. Another time he says she was ironing and threatened to hit him with the iron if he did not get out of the house. On another occasion he says he had been out as a musician playing at a dance given at the Country Club, and as the dance continued until three a. m., he did not get home until about four o'clock and found her getting ready to go down in the basement to start up the furnace; and that when he offered to go down, she refused to accept the offer saying, "I don't want any bum that stays out until four o'clock in the morning to do anything for me." His wife says that he would go out at night and not come back until the wee

small hours of the morning and sometimes he would not come home at all, and when he did he would not tell her where he had been. His wife says that on one of these occasions he came in just as she was going down to fix the furnace, and he told her to stay in bed as he would fix it, but that she replied, "No you wont. No man that stays out all night can shake the furnace for me." On another occasion the husband says his wife threatened to strike him with a curtain pole. In none of these instances does he set forth the circumstances under which the matter arose. He does not state the facts showing the setting in which the event occurred. So that his testimony was very little more than mere conclusions as to his wife's treatment of him.

But however this may be, we think the wife's plea of *res adjudicata* should have been upheld, and will prevent plaintiff from obtaining the relief he has sought; and that her demurrer offered at the close of the evidence in chief should have been sustained.

It is conceded that he brought the prior divorce suit hereinbefore referred to and that the judgment therein rendered was against him. Plaintiff also admitted that everthing he testified to against his wife in the present suit happened *before* the other suit was brought, with the exception of a suit for alienation brought against his mother and relations, which will be referred to later. He also admitted that he *knew* of all the acts complained of against his wife before the former suit was brought, and that he *testified* in said former trial as to all of said acts with the possible exception of the curtain pole incident. The petition in the former case was introduced in evidence and it is practically the same as the petition in this case. Under such circumstances, unless something has occurred since the former judgment was rendered to create new or additional grounds for divorce, it would seem that the former judgment was *res adjudicata* in this suit. [Richardson v. Stowe, 102 Mo. 33, 44; Johnson v. United Railways Co., 243 Mo. 278, 289; Hines v. Hines, 243 Mo. 480, 495; Coleman v. Dalton, 71 Mo. App. 14, 21, 22; Lynch v. St. Louis, etc.,

R. Co., 180 Mo. 169, 174; Cantwell v. Johnson, 236 Mo. 575, 603; Emert v. Aldridge, 231 Mo. 124; Viertel v. Viertel, 99 Mo. App. 710, 716; Ogden v. Chicago, etc., R. Co., 131 Mo. App. 331; Scientific American Club v. Horchitz, 168 Mo. App. 35.]

The fact that the curtain pole incident may not have been testified to in the former trial makes no difference. The cause of action herein is identical with that in the former suit, and the plaintiff could have brought forward that testimony then if he, in fact, did not do so. Whether certain testimony was offered in a former trial is not material unless the subsequent suit is on a demand different from or collateral to the cause of action in the former action. [Larue v. Kemp, 186 Mo. App. 57, 72; State ex rel. v. Center Mining Co., 262 Mo. 490, 501-2.]

The fact that defendant did not object to the introduction of plaintiff's evidence does not affect the right to apply the bar of *res adjudicata.*. That evidence was admissible along with any subsequently occurring facts giving rise to grounds for divorce, and could be considered as emphasizing and strengthening any facts arising after the former judgwent. The defendant could not know the plaintiff was not going to introduce any new facts, but as soon as it was discovered that plaintiff was not relying upon anything new, the rule in bar was invoked.

The evidence disclosed that after the rendition of the judgment against plaintiff in the first suit, defendant brought suit against her mother-in-law and certain other relatives of her husband charging them with alienating her husband's affections. Thereupon, her husband and his mother paid her $1500 and obtained from her a written contract that, in consideration of the receipt of said sum, she released him from all past, present and future obligations for maintenance and support, and also released all of the defendants in her alienation suit from all claims for damages on that account and agreed to dismiss the suit, which was done.

After the wife's motion for a new trial in the case at bar had been argued and submitted, plaintiff obtained

leave, over defendant's objections and exception, to a-mend his petition for divorce by inserting the bringing of said alienation suit against his relatives as an additional ground of divorce, it being alleged that said suit *had no justification,* and plaintiff was thereby compelled to pay her a large sum of money to get her to dismiss said suit to his great humilation, etc. It would seem that if there was no justification for the alienation suit, plaintiff was not *compelled* to pay anything to get it dismissed. Certainly the fact that she accepted $1500 in settlement thereof was no admission on her part that her suit had no justification for it.

Plaintiff claims that the bringing of this suit, *without justification,* subsequent to the adjudication of the former divorce suit, is a new ground for divorce upon which the decree in the present suit can be based. If the husband's relatives did in fact alienate his affection from his wife, it is hard to see how a suit by her against such relatives would give the husband a ground for divorce, especially if he had no other grounds. (And the former judgment was that he had none). This is, in effect, admitted, since the amendment says the alienation suit was without justification. But how can it be said that the suit was without justification, since there was no testimony offered on that issue? Indeed, there was no opportunity for the offering of evidence upon that point since the amendment to the petition was not made until long after the trial was over and after the motion for new trial had been argued and submitted.

Plaintiff in his brief urges the point that the spouse who drives the other from home and causes a separation by force or misconduct is guilty of desertion even though the guilty spouse continues to reside in the matrimonial home. His point is that since he testified that he was compelled to leave home or was driven from it by his wife, and since that condition has remained unchanged for more than the statutory period of one year, a cause of action for divorce based on desertion has ripened unto him *since* the judgment in the former

suit, and for this reason the judgment rendered in the present case should stand. Several things may be said in answer to that. The shortest and most effectual of which is that desertion was not pleaded. In the next place, the judgment in the former case is an adjudication of the question whether he was driven from home or not, for if he was driven from home by his wife's cruel conduct he would have been entitled to a divorce then. Again, whatever else may be said of plaintiff's evidence in this case, it fails to show that he was compelled to leave home or was driven from home by his wife's conduct. It seems that at the hotel (owned by his mother), where the parties lived and worked, was a woman by the name of England or Ingland who was also an employee. The wife, so it appears from plaintiff's testimony, insisted that Miss England leave the house. Just why, does not appear, as the wife was not permitted by the court to show the reason. At any rate, the husband was opposed to Miss England's going, and when the wife insisted that she leave, *he* left and wrote defendant a letter, inclosing her some money, and saying, "I told you that if you ordered Englands out of that, I would go too and I feel as though I must keep my word, so goodby." So that plaintiff left because his wife insisted upon the discharge of the other employee and not because he was driven from home.

Furthermore, it appears from the evidence that after plaintiff left, he did not reveal to her his whereabouts; and, although defendant tried repeatedly to ascertain where he had gone, she was unable to do so, nor would his relatives tell her where he was though she inquired of them frequently. Consequently, even if desertion had been pleaded, he would hardly be in a position to claim that his wife deserted him, since clearly he remained away willingly and gave his wife no opportunity to seek his return even if she was partly to blame for his leaving. [Herold v. Herold, 47 N. J. Eq. 210, 213.]

The judgment should be reversed. It is so ordered. The other judges concur.