**CITY OF SUGAR CREEK, MO., v. STANDARD OIL CO. (INDIANA) (DICKINSON et al., Interveners).**

No. 13481.

Circuit Court of Appeals, Eighth Circuit.

Sept. 2, 1947.

Jacob Brown, of Kansas City, Mo. (Ludwick Graves and Irving Fane, both of Kansas City, Mo., on the brief), for appellant.

R. R. Brewster, Jr., and John G. Madden, both of Kansas City, Mo. (A. L. Green, of Chicago, Ill., on the brief), for appellee Standard Oil Co. (Indiana).

Rufus Burrus, of Independence, Mo., for intervener appellee Independence Water Works Co.

Winston Woodson, of Kansas City, Mo., for intervener appellees Atchison, T. & S. F. Ry. Co. and Kansas City Southern Ry. Co.

Fred B. Mertsheimer, of Kansas City, Mo., for intervener appellees Edith L. C. Dickinson et al.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is one to have declared invalid and to enjoin an annexation of contiguous lands made by the City of Sugar Creek, Missouri, under an ordinance of its board of aldermen and a vote of its electors.[1] The trial court held that the annexation as made was without a reasonable basis and granted an injunction prohibiting the City from exercising municipal authority over the area under the annexing ordinance. The City has appealed.

Jurisdiction rests on diversity of citizenship. The suit was instituted by Standard Oil Company (Indiana). Independence Water Works Company, The Atchison, Topeka and Santa Fe Railway Company, and the Kansas City Southern Railway Company each filed a complaint in intervention. Five residents of a part of the area annexed also were permitted to file a complaint in intervention, attacking the validity of the annexation on behalf of themselves and all others similarly situated. Under the evidence, they apparently represented the views of a great majority of the home-owners in the residential developments included in the annexation.

The City of Sugar Creek is a city of Missouri of the fourth class, incorporated in 1920. Its population at that time was 1800. By 1930, the population had diminished to 1657, and by 1940 to 1638. In 1945, at the time of the attempted annexation, the City had approximately 1700 inhabitants.

The original corporate limits contained 534 acres of land. Of this, 200 acres were owned by Standard Oil and were used as a site for its refinery. The City thus really had an area for municipal, residential and ordinary business purposes of 334 acres. Only 36 per cent of this area ever had been so used. Of the remaining 64 per cent, part was platted into lots and part was not. A considerable portion of the vacant area, according to the trial court's findings, was both suitable and available for building.

In 1944, Standard Oil bought a 90-acre tract adjoining its refinery and lying just beyond the city limits. In February 1945, it announced its plans to build a new high-octane catalytic plant on this ground at a cost of several million dollars. The mayor and aldermen of Sugar Creek hastened into action to extend the boundaries of the City. In secret session, they passed an ordinance, with three readings of it in one night, annexing the 90-acre tract and a large amount of other land on each of the four sides of the City, in a total of 757 acres. They apparently did not know just how many acres they were annexing, for when they publicized their action they declared that the area of the City was being increased by approximately 300 acres.

---

[1] See Mo.R.S.A. § 7097.

Besides the 90-acre Standard Oil tract, the annexation included 90 acres of ground of the Independence Water Works Co.,[2] a privately owned utility, which was not supplying water to Sugar Creek (the City having its own water system), but which did provide the water for a residential area that also was being annexed. Annexed, too, was the right of way of the Santa Fe, which ran just north of the City. Similarly included, was the Kansas City-Southern's right of way, which, however, ran through the City but which previously had been excluded from the corporate area. In the 757 acres, there was a substantial amount of overflow land along the Missouri River containing brush and willows, as well as other land that was bordered by high bluffs. Much of the land annexed, according to the findings of the trial court, was not of farming character but was useable for grazing. The mayor of the City admitted on the stand that a great part of the annexed area was not suitable for building or housing projects.

There were further included in the annexation some residential developments with approximately 200 family homes, but these developments had not been a product or an incident of Sugar Creek's existence. The evidence clearly established and the trial court found that these developments had occurred as part of the growth of the nearby community of Fairmount or as a part of the general growth of the inter-city district of Jackson County lying east of Kansas City and north of Independence, Missouri. According to one of the City's own witnesses, a majority of these people constituted an overflow of the population of Kansas City. Sugar Creek sought to absorb the development without having had any relationship to its settlement or its property value. Also, the residents were without dependence upon the municipality. They were adequately served with such necessary utilities as the City might have supplied. Electricity for the homes was being furnished by the Kansas City Power and Light Co. Water was being furnished by the Independence Water Works Co.

Similarly, police protection was being furnished by the sheriff of Jackson County, whose deputies patrolled the area, and there was no claim that the proximity of the area ever had created any police problem in the City itself. A County fire department, with newer equipment than the City's, was furnishing fire protection. A County sewer district provided sewer facilities. And in fact, as the trial court observed from the evidence, "The sewers in a substantial part of that area cannot be connected with the city sewers and operated efficiently because of a ridge of high ground between the old city and this portion of the annexed area."

There were other findings also relating to the several portions of the annexation, which we need not at this point detail. On the entire situation, from the evidence and after personally viewing the area, the court concluded that, while the City might be warranted in making some extension of its boundaries, the annexation as made was without a reasonable basis; that the greater portion of the annexed area could not upon any reasonable expectation be considered as necessary for the growth or expansion of the City; that any view that a substantial part of the entire area would be needed for residential or business purposes or as an incident to any enterprise located within the City or having some relationship to its growth was without a reasonable justification; and that as to such municipal purposes as an extension of the City's street system, under the plan proposed by one of the City's witnesses on the trial or under any plan which might be prophesied from the evidence as being possibly desirable in the future, the annexation as made was equally clearly unreasonable.

Under Missouri law, in any annexation where the prescriptions of the statute have been followed, the action of the city will be presumed to have had a reasonable basis. Hislop v. City of Joplin, 250 Mo. 588, 157 S.W. 625, 628. But a right to test legally whether the city's action has in fact had a reasonable basis is

---

[2] Some of the 90 acres was not acquired by the Water Works Co. until after the annexation.

recognized, since the statute does not give to those whose property is being annexed any voice or vote on the annexation. State ex rel. Blair v. Center Creek Mining Co., 262 Mo. 490, 504, 171 S.W. 356, 360. The courts, however, will not undertake to substitute their judgment for that of the city council and the electorate, and they will therefore not declare an annexation invalid unless the evidence is convincing that reasonable men would have to agree, from the nature, scope, object, need and results of the annexation, that the action was unreasonable and ought not to have been taken. Municipal need must be liberally viewed and is, of course, entitled to dominance over all other considerations.

The Missouri Supreme Court stated the controlling principle thus, in State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393, 398: "It was not for the trial court to decide whether, upon the facts shown to exist, the extension of the boundaries was necessary, but to determine whether or not, upon the facts shown to exist, reasonable men would differ as to the necessity of the extension. If the question of whether or not the territory involved should be included within the city limits was fairly debatable, that is, if there was substantial evidence each way so that reasonable men would differ about its necessity, then the decision of that question was for the city council and the city electorate and not for the court. When the evidence shows a fairly debatable question about the matter, then neither way the question might be decided would be unreasonable. On the other hand, if there was substantial evidence tending to show that there was no fairly debatable question about it, and that reasonable men could not differ about it, but would have to agree that it was not necessary to annex the territory, then a trial court's finding that it was unreasonable would be binding (in spite of testimony to the contrary), and would have to be sustained."

Missouri has adopted as general guides for assisting the courts in testing whether an annexation has a reasonable basis the considerations summarized in Vestal v. Little Rock, 54 Ark. 321, 329, 15 S.W. 891, 16 S.W. 291, 11 L.R.A. 778, where it was declared that city limits may reasonably and properly be extended to take in contiguous lands (1) when such lands are platted and held for sale or use as town lots; (2) whether platted or not, if they are held to be brought on the market and sold as urban property when they reach a value corresponding with the views of the owner; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the municipality beyond its legal boundaries; (4) when they are needed for any proper purpose of the municipality, as for the extension of its streets, or sewer, gas, or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and (5) when they are valuable by reason of their adaptability for prospective urban use, but the mere fact that their value is enhanced by their nearness to the municipality will not afford a ground for their annexation if it does not appear that the enhancement is the result of their adaptability to urban use; and furthermore annexation ordinarily should not be made of lands (1) which are used only for purposes of agriculture or horticulture and are valuable on account of such use, or (2) which are vacant and do not derive special value from their adaptability for urban uses.

These general guides have been repeated by the Missouri courts in a number of cases, the most notable of which perhaps is State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007, 1022. The considerations enumerated are, of course, not legal absolutes, in the sense that the presence of one of them in a part of a situation necessarily is conclusive of the reasonableness of an annexation as made. For instance, the fact that some contiguous territory has become densely settled does not mean that any annexation attempted of it necessarily has a reasonable basis as a matter of law, regardless of the scope of the area added and without any right, as where the area is part of an intercity development, to view in any manner whether the settlement has had its growth from or because of the annexing city; whether

it has derived any part of its value as urban property or any other municipal benefits from its proximity to such city; what its community ties have been; what advantages it will receive from the annexation; what municipal purposes will be served by the action; etc., etc.

Thus, in Nolting v. City of Overland, 354 Mo. 960, 192 S.W.2d 863, it was held that the attempt of a city of 3,000 inhabitants and an area of 474 acres to extend its limits so as to annex a surrounding area of 5,591 acres and 30,000 people was unreasonable. The court said, 192 S.W.2d at page 864, among other things, that "It is important to observe that much of the territory taken in was and is adjacent to other villages and that the inhabitants thereof had and have no community interest with the city of Overland."

Similarly, in Jones v. City of Clayton, Mo.App., 7 S.W.2d 1022, where it was attempted to annex a development of approximately 50 country homes, which were the residences of persons having their businesses in the City of St. Louis, the court in holding the annexation unreasonable gave consideration to the factors, among others, that the development was not an overflow from the City of Clayton; that it was without dependence on or benefits from the municipality; and that its value was not due to its adjacency to the City of Clayton but to its nearness to the City of St. Louis.

The point is that an annexation ordinarily involves not just a single factor but a variety, and "The facts of each case, therefore, are the primary consideration." State ex inf. Major v. Kansas City, supra, 134 S.W. at page 1016. And the question of reasonableness is one on the entirety of the attempted annexation, so that an annexation cannot necessarily be said to have had a reasonable basis merely because a sound reason may exist for taking in some particular part of the territory.

On the facts of the present case, we think the trial court was warranted in holding that, within the rule of the Missouri cases, reasonable men, having no personal interest in the local situation, would have to agree that the annexation as undertaken by the City of Sugar Creek was unreasonable. What was said by the court in Jones v. City of Ferguson, Mo. App., 164 S.W.2d 112, 120, is also pertinent here: "From the evidence and exhibits in the record alone we are satisfied that a proper judgment was reached, but in addition thereto we know from the record that an experienced trial judge had the great advantage of personally seeing and inspecting, in the presence of counsel for the parties, the land in question, thereby giving him a most favorable opportunity to weigh the evidence before him. This but strengthens our view that the right result was reached."

The City of Sugar Creek had been for 25 years a small, static community. It had no prospect for anything more than a nominal growth in population, except as some of the employees of the new Standard Oil plant might become residents of the City. Under the trial court's findings, there was no likelihood that more than 100 residents would be added to the city and the annexed territory from the plant. While there was practically no vacant property in the city to accommodate any new residents, the same was true of the surrounding residential developments which the City attempted to annex, so that the annexation would not provide any existing, available housing facilities. A large amount of ground in the City was vacant and suitable and available for building. And if the City thought it advisable to take in some further territory in order to provide a wider choice, this still would not furnish a reasonable justification for annexing 757 acres (the City had never used over 120 acres of its area for municipal, residential and ordinary business purposes for its 1700 inhabitants). Besides, a great part of the 757 acres was clearly unsuited for building purposes. The need of territory for building additional housing accommodations was the principal reason given by the mayor and the aldermen for the annexation in the public statement which they made after the ordinance was passed.

The statement gave as a second reason for the annexation the need of Sugar Creek

to extend its street and road system. The City, however, had not had any street extension or development plan either before or after the annexation. And the plan which it had an engineer-witness suggest on the trial would have required only a small portion of the annexed area in order to be carried out. The trial court found on the evidence and after viewing the annexed area that the annexation was not necessary "for the extension of the street system of the old city for any purpose reasonably prophesied by the evidence." There was a good deal of conflicting testimony on whether the roads and streets in Sugar Creek were in fact any better than those in the residential developments annexed. The weight of the evidence tended to show that the streets of the City had been somewhat better maintained, but there was no such situation presented as could make this reasonably a permeative or controlling reason for the entire annexation, and the less so since it did not even relate to the greater portion of the 757 acres.

We have previously referred to the facts that the residential developments included had in no way owed their growth or their value to Sugar Creek and that they were without dependence on the City for the furnishing of necessary utilities, sewer facilities, or police and fire protection. The developments were, it is true, without street lights but it was not impossible for them to have obtained such lights if they wanted them, though the difficulties would be greater than in an incorporated area. Here again, however, the fact that the City could provide street lights for the residential developments would hardly be a reasonable justification for having annexed 757 acres, to most of which this argument had no possible application. Mention has also been made of the fact that a substantial amount of the annexed territory was overflow land, for which the City admittedly was in no position and had no intention to build dykes, and that another part of the land was bordered by high bluffs.

Without attempting to set out all the details of the considerations involved and all the evidence, we are convinced that, on the basis of the scope of the annexation made, of the nature of much of the land involved, of any possible or prospective need of the municipality, of any benefits enjoyed or value acquired by the annexed territory from its previous proximity to the City, and of such advantages as might be contributed by the annexation, the trial court was entitled to hold that reasonable men would have to agree that the annexation as made was unreasonable and that the City had acted capriciously and not with reasoned discretion. This, of course, does not mean that the City had no right to annex any part or parts of the territory involved. Our concern is merely with whether it was proper for the trial court to declare unreasonable the annexation as made.

Affirmed.